FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

97 JAN 21 AM 11:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| KEVIN B. EDMONDSON, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CV 96-PT-1291-M |
| CITY OF GLENCO, | ) ) | |
| Defendant. | ) ) ) | |

**ENTERED**
JAN 2 1 1997

## MEMORANDUM OPINION

This cause comes on to be heard on defendant's Motion for Summary Judgment filed on November 12, 1996. The court conducted a recorded hearing on January 15, 1997. The court refers to that hearing for a further development of the claims and facts in issue. After considering the plaintiff's statement as to the claims and facts at issue, the court has decided that the motion must be granted as to the federal claims. The court's conclusion is based upon the attached highlighted cases, particularly Johnson v. Moore, 958 F.2d 92 (5th Cir. 1992) and the cases cited therein. The other attached cases are to compare.

1

In the recorded phone conference, plaintiff has acknowledged that the only individuals that he claims played a role in the circumstances leading to his claim were the prosecutor, the judge, the defense attorney and the City's attorney. All the City's attorney did was to file an answer to a petition. There is no evidence that anyone conspired with the judge. If there is even an allegation of a conspiracy, it is conclusory. See *Fulmer v. Graddick*, 739 F.2d 553 (11th Cir. 1984). There is no evidence that the Mayor or any member of the City's governing body or any other City official, other than the judge, arrived at a decision or established a policy. There is no basis for City liability under *Monell*. The City is obviously not liable, based on a *respondeat superior* doctrine, merely because the judge and/or the prosecutor and/or the defense attorney made a mistake in the decision.[1]

The court also notes the independence of such judges under the provisions of §§ 12-14-1 Code of Alabama 1975, *et. seq.* and

---

[1] While plaintiff, in the recorded conference, was unable to state the constitutional basis for his claim, the court assumes that it is a Fourteenth Amendment substantive or procedural due process claim. The court does not reach the issue of whether the defendant's right to appeal the sentence to state court defeats the claim, nor whether the claim is a based on the denial of a fundamental right or a generic substantive due process right.

the Alabama Constitutional Provisions which they implement. Amendment No. 328. The court particularly notes that a municipal judge must be licensed to practice law and shall not "otherwise be employed in any capacity by the municipality during his term of office." Section 12-14-30(d). The municipal judges must take an oath of office "provided by the Constitution." Id., at (f). They are subject to the same grounds of disqualification as are circuit judges. Id., at (g). Attention is called to other sections of this legislation for the powers and duties of such judges. Attention is also called to the Canon of Judicial Ethics of Alabama.[2] Plaintiff has not suggested that, in sentencing plaintiff or in revoking his probation, the judge was acting in some administrative capacity for the City. Both are judicial functions. While the judge may be a municipal judge rather than a state judge, there is no evidence that he was applying a municipal policy, nor that he was acting in an administrative capacity. The law forbids his being employed by the City other than as a judge. 6.01 of Amendment No. 328 of the Alabama Constitution vests all judicial authority in Alabama in a "unified judicial system." This includes all the way from the

---

[2]Particularly Canons 1, 2, 3, and 7.

Alabama Supreme Court to "such municipal courts as may be provided by law." See also 6.065 of Amendment No. 328. See also §§ 6-12 and 6-18 of Amendment 328.

The motion will be granted partially. The federal law claims will be dismissed with prejudice. While the state law claims may be similarly meritless, the court will remand said claims to the Circuit Court of Etowah County, Alabama.[3]

This 12 day of January, 1997.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[3]This court does not decide whether a governmental entity can, under any circumstances in the absence of a conspiracy, be held liable under § 1983 for the acts of a judge who would otherwise have absolute immunity.

4

JOHNSON v. MOORE
Cite as 958 F.2d 92 (5th Cir. 1992)
93

Appeal from the United States District Court for the Northern District of Mississippi.

Before KING, EMILIO M. GARZA and DeMOSS, Circuit Judges.

KING, Circuit Judge:

Glenn Johnson appeals from the district court's dismissal of his § 1983 complaint for failure to state a claim upon which relief can be granted. Johnson sued the city of Holly Springs and D. Rook Moore, its municipal court judge, alleging that he had been the victim of the city's policy of sentencing indigent criminal defendants to jail without benefit of counsel and without a knowing and intelligent waiver of the right to counsel. The district court held that Johnson had failed to allege the existence of a municipal policy, thereby precluding the recovery of damages. The court further held that Johnson lacked standing to seek declaratory and injunctive relief against Judge Moore in his individual capacity. As the district court's decision is grounded in firmly decided precedent, we affirm the dismissal.

I. BACKGROUND

Glenn Johnson sued D. Rook Moore, III, a municipal court judge, and the city of Holly Springs, Mississippi on October 3, 1990. He alleged that his constitutional rights were violated when Moore sentenced him to jail numerous times, including a three-day jail term on July 25, 1988, and a five-day jail term on July 16, 1990, without representation of counsel or waiver of his right to an attorney. Johnson complained that Judge Moore's actions committing him to jail without counsel was part of an official municipal policy of the city of Holly Springs.

From the city and from Moore in his official capacity, Johnson asked for damages for mental anxiety and stress, as well as for loss of income, which he allegedly suffered when he was committed to jail without assistance of counsel. From Moore in his individual capacity, Johnson sought declaratory and injunctive relief to prevent him from being incarcerated without counsel in the future.

The defendants moved to dismiss Johnson's complaint pursuant to Fed.R.Civ.P. 12(b)(6). They argued that Johnson's claims against Moore in his official capacity and against the city should be dismissed because Johnson had not identified a municipal policy that caused his injuries. They also argued that Johnson's claim for declaratory and injunctive relief should be dismissed because no case or controversy existed. The district court granted the motion on August 27, 1991. Johnson filed a timely notice of appeal.

II. ANALYSIS

A. Municipal Liability

Johnson complains that the court erred when it did not hold the city liable for its unconstitutional act. In reviewing a Rule 12(b)(6) dismissal, we accept "all well pleaded averments as true and view them in the light most favorable to the plaintiff." *Rankin v. City of Wichita Falls*, 762 F.2d 444, 446 (5th Cir.1985). The dismissal will not be upheld "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

[1, 2] Liability under 42 U.S.C. § 1983 may not be imposed on a government entity on a theory of respondeat superior for the actions of government employees. *Monell v. Department of Social Services*, 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978). Local governing bodies may be liable under § 1983, however, where the alleged unconstitutional activity is inflicted pursuant to official policy. *Id.* at 690–91, 98 S.Ct. at 2035–36. In order to state a claim, therefore, Johnson must set forth facts which, if true, show that his constitutional rights were violated as a result of the city's official policy.

[3] Assuming, without deciding, that Johnson was constitutionally entitled to counsel in connection with his various jail-

958 F.2d—5

ings, we turn to the question whether Judge Moore's actions constituted official municipal policy. Johnson complains that because Moore was the final authority on his incarceration, Moore executed official municipal policy. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). We have defined official policy as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

We have repeatedly held, however, that a municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker. *See Bigford v. Taylor,* 834 F.2d 1213, 1221–22 (5th Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 108 (1988); *Carbalan v. Vaughn,* 760 F.2d 662, 665 (5th Cir.), *cert. denied,* 474 U.S. 1007, 106 S.Ct. 529, 88 L.Ed.2d 461 (1985); *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980) (distinguishing judge's administrative duties, actions pursuant to which may constitute county policy under *Monell,* from judge's judicial function, in which he or she effectuates state policy by applying state law).

[4, 5] Johnson does not contend, in his complaint below or in his brief on appeal, that Judge Moore sentenced him to jail pursuant to the judge's administrative or other non-judicial duties. He argues only that under *Pembaur,* the municipal judge is a final policymaker whose official actions constitute municipal policy. This argument ignores the distinction we have consistently drawn between a judge's judicial and administrative duties. Only with respect to actions taken pursuant to his or her administrative role can a judge be said to institute municipal policy under *Pembaur* and *Monell.* Johnson's complaint fails to show that his constitutional rights were violated as a result of the city's official policy. The district court did not err when it dismissed Johnson's claims against the city and Judge Moore in his official capacity.

*B. Standing*

[6] Johnson further complains that the court erred when it dismissed his claim for injunctive and declaratory relief against Judge Moore in his individual capacity due to lack of standing. For a plaintiff to demonstrate standing to obtain injunctive relief, he must show that he "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (quotations omitted). It would require conjecture or hypothesis to find that Johnson will again act in such a way as to be arrested on a misdemeanor charge and incarcerated by Moore without representation of counsel. "Past exposure to illegal conduct does not in itself show a present case or controversy ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974), *quoted in Lyons,* 461 U.S. at 102, 103 S.Ct. at 1665. Just as in *O'Shea* and *Lyons,* Johnson can show only a distantly speculative possibility that he will again be subjected to the practice he complains of. Consequently, he lacks standing to seek injunctive or declaratory relief.

[7] Johnson argues that this case is subject to the "capable of repetition, but

940 F.2d 275
(Cite as: 940 F.2d 275)

Page 12

Jon M. WOODS and Connie Blakley, Plaintiffs-Appellants,
v.
CITY OF MICHIGAN CITY, INDIANA, Michael M. Bigda, Officer Hudson, Four Other Unknown Officers, individually and County of LaPorte, Indiana, Defendants-Appellees.

No. 90-1582.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1990.

Decided Aug. 15, 1991.

Arrestee brought § 1983 suit against city, county and various police officers claiming unlawful detention. The United States District Court for the Northern District of Indiana, South Bend Division, 685 F.Supp. 1457, Robert L. Miller, Jr., J., granted summary judgment in favor of defendants, and arrestee appealed. The Court of Appeals, Manion, Circuit Judge, held that superior court judge who issued illegal bond schedule was an official of the state, rather than of the city or county as required to impose liability under § 1983 on city or county for wrongful detention of arrestee.

Affirmed.

Will, Senior District Judge, sitting by designation, filed concurring opinion.

**[1] CIVIL RIGHTS ⚖ 206(1)**
78k206(1)
Municipality can be found liable under § 1983 only where municipality itself causes constitutional violation at issue. 42 U.S.C.A. § 1983.

**[2] CIVIL RIGHTS ⚖ 206(3)**
78k206(3)
For purposes of determining whether municipality may be subject to liability under § 1983, official acts of municipality include those of government officials whose acts or edicts may fairly be said to represent official policy. 42 U.S.C.A. § 1983.

**[3] CIVIL RIGHTS ⚖ 206(3)**
78k206(3)
When execution of municipal policy or custom results in deprivation of citizens' rights and privileges, municipality may be subject to liability under § 1983. 42 U.S.C.A. § 1983.

**[4] CIVIL RIGHTS ⚖ 206(3)**
78k206(3)
Municipal liability under § 1983 attaches only where decision maker possesses final authority to establish municipal policy with respect to action ordered; authority to make municipal policy may be granted directly by legislative enactment or may be delegated by official who possesses such authority. 42 U.S.C.A. § 1983.

**[5] CIVIL RIGHTS ⚖ 206(1)**
78k206(1)
Whether official had final policy-making authority, as required for municipal liability under § 1983, is question of state law. 42 U.S.C.A. § 1983.

**[6] CIVIL RIGHTS ⚖ 207(1)**
78k207(1)
Superior court judge who issued illegal bond schedule was an official of the state, rather than of the city or county as required to impose liability under § 1983 on city or county for wrongful detention of arrestee. West's A.I.C. 35-33-8-4(a); West's A.I.C. 9-4-1-131 (Repealed); 42 U.S.C.A. § 1983.

**[7] FEDERAL CIVIL PROCEDURE ⚖ 2655**
170Ak2655
Motion to amend or alter final judgment cannot be used to raise arguments which could, and should have been made before trial court entered final judgment. Fed.Rules Civ.Proc.Rule 59(e), 28 U.S.C.A.

**[8] FEDERAL CIVIL PROCEDURE ⚖ 2559**
170Ak2559
District court did not abuse its discretion in denying motion to amend summary judgment for city and county on § 1983 claim on grounds not advanced on motion for summary judgment. Fed.Rules Civ.Proc.Rule 59(e), 28 U.S.C.A.; 42 U.S.C.A. § 1983.

**[9] CIVIL RIGHTS ⚖ 214(6)**
78k214(6)
Police officers acting pursuant to judicially promulgated bond schedule which required cash bond in order for arrestee to gain his freedom were entitled to qualified immunity from arrestee's § 1983 wrongful detention claim; officers did not knowingly violate arrestee's clearly established rights, as it was

Copr. © West 1997 No claim to orig. U.S. govt. works

reasonable for them to follow clear directive of state court judge. West's A.I.C. 9-4-1-131 (Repealed); 42 U.S.C.A. § 1983.

*276 Hugo E. Martz (argued), Valparaiso, Ind., for plaintiffs-appellants.

Charles E. Hervas (argued), James G. Sotos, James R. Schirott, Michael W. Condon, Phillip A. Luetkehans, Betty J. Gloss, Schirott & Associates, Itasca, Ill., Steven C. Snyder, Michigan City, Ind., Shaw R. Friedman, Bokland, Yandt & Friedman, and Martin W. Kus, Newby, Lewis, Kaminski & Jones, LaPorte, Ind., for defendants-appellees.

Before BAUER, Chief Judge, MANION, Circuit Judge, and WILL, Senior District Judge. [FN*]

> FN* The Honorable Hubert L. Will, Senior Judge for the U.S. District Court for the Northern District of Illinois, is sitting by designation.

MANION, Circuit Judge.

Plaintiff Jon M. Woods brought suit under 42 U.S.C. § 1983 against the City, the County, and various police officers claiming unlawful detention after his arrest for reckless driving. Before releasing Woods the City police required him to post bond in accordance with a bond schedule issued by a state Superior Court judge. State law, however, explicitly eliminated the requirement that bond be posted for release in reckless driving offenses, conditioning such release instead on the defendant's signing a promise to appear in court. Woods claimed that his detention and need to post bond in violation of state law resulted in a denial of his liberty interest under the Fourteenth Amendment. The district court concluded that the state judge's bond directive, although contrary to state law, was not a policy of the City or County. He concluded that Woods did not state a legally cognizable claim and granted summary judgment in favor of the defendants. The district court also ruled that the defendant police officers were protected by qualified immunity, and consequently dismissed Woods' suit against them. Woods appeals, and we affirm.

I.

On May 25, 1986, at or around 10:30 p.m., defendant Officer Bigda of the Michigan City police department, while on his way home noticed an automobile "squealing" its tires in traffic within the city limits of Michigan City, located within LaPorte County, Indiana. Officer Bigda observed the car travel about one block and make an abrupt lane change in front of another car, causing that car to slow down suddenly. When Officer Bigda saw the car "squeal" from another light, he called on his police radio for assistance. Shortly, Officer Hudson and four other unknown policemen pulled the offending car over.

The police officers stopped the car and learned that the driver was Jon Woods (who was seventeen at the time) and that the car was owned by Woods' mother Connie Blakley. Bigda informed Woods that he had been following him and was arresting him for reckless driving, a misdemeanor offense. Bigda told Woods the arrest was based on the squealing tires, and for almost causing an accident with another car because of the unsafe lane change. The policemen searched Woods' car at the scene but found no incriminating evidence. Friends accompanying Woods were permitted to drive the car back to Woods' mother's house. Woods was taken to the Michigan City Jail and charged with reckless driving (Ind.Code § 9-4-1-56.1). Pursuant to a bond schedule issued by LaPorte Superior Court Judge Arthur Keppen, Woods was detained in the Michigan City Jail overnight (for about eight hours) until his mother procured his release with a $250 bond.

As a result of his detention, Woods filed a lawsuit in federal court against Michigan City, LaPorte County, and several police officers alleging an unconstitutional deprivation of his liberty. Woods claims that the police wrongfully detained him pursuant *277 to the bond schedule issued by Superior Court Judge Keppen because Indiana Code § 9-4-1-131 requires the release of every Indiana resident arrested for a traffic misdemeanor offense upon a signed promise to appear in court at a later date. [FN1] Woods argued that the state law permitting his release upon signature vested him with a state-created liberty interest which may not be arbitrarily or without good reason denied him under the U.S. Constitution.

> FN1. Ind.Code § 9-4-1-131 provides:
> Whenever a person who is a resident of this state is arrested for any misdemeanor regulating the use and operation of motor vehicles, and the resident is not immediately taken to court as provided in section 130.1 of this chapter, the person shall be released from custody by the arresting officer upon signing a written promise to appear in the proper court at a time and date indicated on the promise. The resident

shall be given a copy of the promise.



The district court entered summary judgment against Woods, stating in part that Woods could not show under Indiana law that the LaPorte Superior Court judge was a "policymaker" with ultimate policymaking authority necessary to impose liability on the municipal defendants for activity resulting in due process violations. The district court also granted qualified immunity to the defendant police officers, holding that the police's enforcement of the judicially pronounced bond schedule was not a violation of the "clearly established" rights of individuals within their localities.

II.

Our standard for evaluating the grant of a summary judgment motion is well established. "In examining the district court's grant of summary judgment, our duty is to review de novo the record and the controlling law." PPG Indus. v. Russell, 887 F.2d 820, 823 (7th Cir.1989). Typically our task is to "decide whether the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to the judgment as a matter of law." Wolf v. Larson, 897 F.2d 1409, 1411 (7th Cir.1990). However, when the parties do not dispute the factual basis of a motion for summary judgment, as in this case, the reviewing court's only inquiry is whether judgment should have been issued by the district court as a matter of law. Town of South Whitley v. Cincinnati Insurance, 921 F.2d 104 (7th Cir.1990).

III.

Woods argues that Michigan City and LaPorte County are liable under 42 U.S.C. § 1983 [FN2] due to the directive of Judge Keppen making reckless driving a bondable offense. He argues that the directive contravenes Indiana law, Ind.Code § 9-4-1-131 giving Indiana residents an inviolable liberty interest protected by the U.S. Constitution. Woods further argues that Judge Keppen, as a judicial officer, is a senior policymaking official sufficient to subject the City and County to liability for constitutional deprivations suffered from the enforcement of the illegal bond schedule.

FN2. Title 42 U.S.C. § 1983 provides, in relevant part, that:
Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

[1] The standards establishing municipal liability under § 1983 are set out in Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), where the Supreme Court decided that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Id. at 694-95, 98 S.Ct. at 2037-38. "It is only when the 'execution of [the] government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." Springfield, Mass. v. Kibbe, 480 U.S. 257, 267, 107 S.Ct. 1114, 1119, 94 L.Ed.2d 293 (1987) (quoting Monell, supra, 436 U.S. at 694, 98 S.Ct. at 2037). "Congress did not intend municipalities to be held liable unless action pursuant to official *278 municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691, 98 S.Ct. at 2036 (emphasis added).

The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible ... [R]ecovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"--that is, acts which the municipality has officially sanctioned or ordered.
Pembaur v. City of Cincinnati, 475 U.S. 469, 479-480, 106 S.Ct. 1292, 1298-1299, 89 L.Ed.2d 452 (1986).

[2][3][4] Thus, the official acts of a municipality include those of governmental officials "whose acts or edicts may fairly be said to represent official policy." Monell, supra, 436 U.S. at 694, 98 S.Ct. at 2037. When the execution of such a policy or custom results in the deprivation of citizens' rights and privileges, the municipality may be subject to liability under § 1983. Municipal liability under § 1983 "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, supra, 475 U.S. at 481, 106 S.Ct. at 1299. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such

Copr. © West 1997 No claim to orig. U.S. govt. works

940 F.2d 275
(Cite as: 940 F.2d 275, *278)

Page 15

authority, "and of course, whether an official had final policymaking authority is a question of state law." Id. at 483, 106 S.Ct. at 1300. The Supreme Court in Pembaur concluded:

> [w]e hold that municipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. See [Oklahoma City v.] Tuttle, [471 U.S. 808, at 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) ] (" 'policy' generally implies a course of action chosen from among various alternatives").

Id., 475 U.S. at 483-484, 106 S.Ct. at 1300-1301. With these standards in mind we must look to the submitted facts and determine whether, as a matter of law, a LaPorte Superior Court judge is a final policymaking authority for the City of Michigan City or LaPorte County.

The parties agree that Judge Keppen, as a LaPorte Superior Court judge, issued a bond schedule to the law enforcement officers within LaPorte County requiring bond for those arrested for reckless driving. [FN3] This requires that those arrested be held until the bond is paid. It is also undisputed that this directive conflicts with Ind.Code § 9-4-1-131 which requires a defendant's release after signing a promise to appear in court at a future date. Thus, the parties agree that Ind.Code § 9-4-1-131 vests in certain persons, including Woods, a liberty interest entitled to protection under the due process clause. Because Woods was detained pending bond payment pursuant to Judge Keppen's directive, he was deprived of his constitutionally protected liberty interest. [*279 FN4]

> FN3. The bond schedule, in its official form, was not included in the record of this case. However, the parties have a common understanding of the nature and operation of Judge Keppen's bond schedule as demonstrated in the following excerpt from Michigan City Defendant's Response To Request For Admissions:
> 1. When the Plaintiff, JON M. WOODS, was arrested for reckless driving on May 25, 1986, there was a bond schedule in force issued by Judge Arthur Keppen, Judge of the LaPorte County Court, sitting in Michigan City, directed to, among other persons and agencies, the MICHIGAN CITY POLICE DEPARTMENT and its police officers.
> ANSWER: Defendant admits the allegations contained in paragraph 1.
> 2. This bond schedule provided, among other things, that persons cited for reckless driving within the jurisdiction of the said court, were required to post a bail bond of TWO HUNDRED FIFTY DOLLARS ($250.00) cash ... and if they did not do so, they were to be held in custody pending the posting of a proper bond or release on such other terms as the court might impose.
> ANSWER: Defendant admits the allegations contained in paragraph 2....

FN4. Although it is questionable whether Woods has a valid liberty interest (see Part IV and concurrence, infra ), since we resolve this case on other grounds we need not reach that constitutional question.

[5] City and county liability to Woods under § 1983 depends upon whether Judge Keppen was a policymaker with final policymaking authority for those municipalities under state law. The identification of a policymaking official is not a question of federal law and is not a question of fact in the usual sense. "Whether an official had final policymaking authority is a question of state law." City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (citing Pembaur, 475 U.S. at 483, 106 S.Ct. at 1300). State law "will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." Praprotnik, 485 U.S. at 125, 108 S.Ct. at 924-25.

[6] Judge Arthur Keppen, author of the offending bond directive, is a judge of the LaPorte Superior Court. Under Indiana law, a judge of a court of criminal jurisdiction is the official with final authority for fixing bail. Ind.Code 35-33-8-4(a). Indiana law reveals that judges of Indiana's circuit, superior and county courts are judicial officers of the State judicial system. "They are not county officials." Pruitt v. Kimbrough, 536 F.Supp. 764, 766 (N.D.Ind.), aff'd 705 F.2d 462 (7th Cir.1982). County courts in Indiana are exclusively units of the judicial branch of the state's constitutional system. Id. Also, see Parsons v. Bourff, 739 F.Supp. 1266 (S.D.Ind.1989), and State ex rel. McClure v. Marion Superior Court, 239 Ind. 472, 158 N.E.2d 264 (1959).

Reckless driving is a violation of state law. State courts, such as LaPorte Superior Court, have jurisdiction over such violations. Since Superior Court judges in Indiana are considered to be officials of the state, Woods' claim that Judge Keppen is an official of the city or county, or that his bond schedule is an act that Michigan City or LaPorte County

have "officially sanctioned or ordered" is unfounded. Pembaur, supra, 475 U.S. at 480, 106 S.Ct. at 1298. Pembaur requires that "municipal liability under § 1983 attaches where, and only where, a deliberate choice to follow a course of action is made ... by the official ... responsible for establishing final policy...." Id. at 483-484, 106 S.Ct. at 1300-1301. No municipal liability attaches in this case because the judge under Indiana law is not such an official vis a vis the city and county. The city and county cannot be held liable under § 1983 unless Woods proved the existence of an unconstitutional municipal policy initiated by a final policymaker for the municipalities. Woods, by naming Judge Keppen as the source of the constitutional deprivation, detaches the local governments from the unconstitutional policy. See Praprotnik, 485 U.S. at 128, 108 S.Ct. at 926. The district court's summary judgment decision that (a) a superior court judge is not a city or county official, and (b) his offending bond schedule was not a "policy" of those localities was proper. Therefore, the City and County are not liable under § 1983 to Woods.

After entry of summary judgment in favor of Michigan City, LaPorte County, and the other defendants, Woods filed a motion to amend or alter final judgment. In his motion, Woods tried to advance another ground for Michigan City's § 1983 liability. Woods argued that deposition testimony and certain party admissions establish that the enforcement of the constitutionally deficient bond schedule was a "custom, practice or usage" which, under Monell, can be a basis for municipal § 1983 liability even though the "custom, practice or usage" is not formally approved or authorized by express municipal policy or policymakers. Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36. [FN5] The district court found, in part, *280 that the "custom and usage" argument had not been presented as an independent ground for liability in the pleadings preceding summary judgment. In denying Woods' motion to amend, the court stated:

> FN5. Relevant language in Monell reads as follows:
> ... Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168 [90 S.Ct. 1598, 1613-1614, 26 L.Ed.2d 142] [citations omitted] (1970): "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials.... Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."
> Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36.

In particular, the plaintiffs now argue that their theory of municipal liability did not rest on Judge Keppen's position as a policymaker for the City of Michigan City, but rested as well upon the theory that the City had its own custom or practice concerning release on bond for persons arrested for reckless driving. The court has reviewed the references in the plaintiffs' March 17, 1988 memorandum in opposition to summary judgment and concludes that reference to what the City does was only by way of illustration of the plaintiffs' basic premise that Judge Keppen was a policymaker. Plaintiffs' Memorandum in Opposition to Summary Judgment, at 15-16 ("An illustration of the fact that Judge Keppen is of a sufficiently high level to set the policy of the Michigan City Police Department ..."). The court considered and rejected the "policymaker" argument, which was the only argument raised in opposition to the summary judgment motion. [FN6]

> FN6. Judge Robert Miller's unpublished memorandum and order of February 18, 1990, at p. 2.

[7][8] A motion to amend or alter a final judgment under Fed.R.Civ.P. 59(e) "cannot be used to raise arguments which could, and should have been made" before the trial court entered the final judgment. See Simon v. United States, 891 F.2d 1154, 1159 (5th Cir.1990); Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir.1986). A district court's decision to grant or deny a Rule 59(e) motion shall not be disturbed upon appeal, unless the district court abused its discretion. Lockhart v. Sullivan, 925 F.2d 214, 219 (7th Cir.1991). The district court in this case did not abuse its discretion. In the pleadings below, plaintiffs' sole argument was that Judge Keppen was a policymaker with final authority to establish policy for Michigan City and LaPorte County. Woods' "custom and usage" argument was not presentable in his motion to amend and was

and we assume, that Texas law requires courts to accept such cards as equal to cash bail of up to $200 per card. According to Carbalan's uncontroverted testimony, when Judge Bagley said that he would not accept such cards under any circumstances, Carbalan telephoned his wife, who drove to the courthouse and wrote a personal check for $407, obtaining his release.

[1] Carbalan's original and amended complaints sought only money damages against Judge Bagley and the city. The amended complaint and amended proposed pretrial order were filed the day before the trial began. Neither the pretrial order nor the amended complaint requested any declaratory or injunctive relief. After the jury had been selected, Carbalan sought leave to amend his complaint to seek declaratory and injunctive relief against Judge Bagley, which the court denied. Carbalan did so presumably because judges are not absolutely immune from suits seeking such relief. *Pulliam v. Allen*, — U.S. —, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).

Both sides agree that the evidence developed at trial showed that Buffalo exercised no control over Judge Bagley's conduct as a municipal judge, and that Judge Bagley had full responsibility for operating the municipal court. There was no evidence that any city official approved or was aware of Judge Bagley's "practice" of not accepting motor club cards. Indeed, the evidence of "practice" was the judge's statement that he would not take them under any circumstances. There was no other evidence that the issue was a recurring one.

The court submitted the issue of the city's liability to the jury, with instructions that Carbalan asserted that city officials allowed Judge Bagley's acts "to occur as a de facto policy of the city," and that the defendants "denied that any such de facto policy existed." The court did not define "de facto policy" or otherwise explain the elements of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Carbalan requested that the court charge the jury that the city's "de facto policy" includes "the acts of those whose acts and edicts fairly represent the policy of the City of Buffalo." The court refused.

In response to special interrogatories, the jury found that Judge Bagley had "denied Plaintiff Carbalan his right to reasonable bail by refusing to accept the tendered motor club cards," but that the city did not have "a policy approving such action...." The jury, asked what sum of money would compensate Carbalan for damages sustained for the "policies of the City of Buffalo," answered "None." The court then entered a judgment that Carbalan take nothing. Finding that Carbalan had not "prevailed," it refused to award attorneys' fees under 42 U.S.C. § 1988.

II

[2] Carbalan, citing the statement in Federal Rule of Civil Procedure 15(a) that leave to amend a complaint "shall be freely given when justice so requires," asks us to reverse the district court's denial of leave to amend his complaint to add claims for declaratory and injunctive relief against Judge Bagley. We can do so only if the court below abused its discretion. *Bamm, Inc. v. GAF Corp.*, 651 F.2d 389, 391 (5th Cir.1981); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). A court's exercise of discretion to deny leave to amend is informed by "undue delay" and "undue prejudice to the opposing party." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

[3] Given the broad reach of judicial immunity the rejected amendment attempting, as it did, to slip past immunity and expose the judge to the threat of attorneys' fees presented a significant shift. As the case had long been framed, Judge Bagley's immunity defense was virtually certain and his expectation of dismissal at the outset of trial was justifiable; it is reasonable to infer that this expectation affected his trial preparation, a reality that while not lifted up on the record, was doubtlessly apparent

CARBALAN v. VAUGHN     665
Cite as 760 F.2d 662 (1985)

to the trial judge. We cannot conclude that the district court abused its discretion in taking into account the lulling of Judge Bagley even though there is no suggestion that it was other than the product of oversight or inadvertence. Similarly, the court was within its discretion in denying leave to amend requested during the trial. *See Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024–25 (5th Cir.1981) (approving denial of leave to amend on similar facts).

[4] Nor can Carbalan rely on Rule 15(b), which allows amendments to pleadings to conform to the evidence presented at trial. Rule 15(b) deals only with issues "tried by express or implied consent of the parties." Judge Bagley did not consent to trial of any claims against him for declaratory or injunctive relief; he successfully moved to be dismissed entirely as a defendant. The trial record reflects no discussion or argument concerning any claims for declaratory or injunctive relief.

[5] Finally, we cannot agree with Carbalan that his general prayer for "such other and further relief ... to which plaintiff may be entitled" constituted a demand for declaratory and injunctive relief in the face of his proposed pretrial order in which he sought only damages.

III

Carbalan argues that the district court erred in its charge on municipal liability; that in any event, the jury's finding that Buffalo had no policy approving Judge Bagley's acts was against the great weight of the evidence. We need not reach Carbalan's complaints about the jury instructions, because on the facts adduced at trial, Buffalo was not liable for Judge Bagley's acts as a matter of law.

The parties agree that Buffalo city officials exercised no control over the municipal court's operations, and gave no guidance or instructions to Judge Bagley. Yet, Carbalan argues that Judge Bagley was, or the jury could have so concluded, a policymaking official of the city, "whose edicts or acts may fairly be said to represent official policy," *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037, and that the city is therefore responsible in damages for any constitutional violation committed by Judge Bagley. The argument relies on *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980), in which we stated that in some areas of responsibility, county judges in Texas are "the final authority or ultimate repository of county power," and that counties can be held responsible for county judges' acts in those fields.

Carbalan, however, ignores a crucial distinction made in *Familias Unidas*. In Texas, county judges perform numerous executive, legislative, and administrative chores, and in doing so can shape county policy. *Id.* at 404. Their judicial function, though, "may more fairly be characterized as the effectuation of the policy of the State of Texas ... for which the citizens of a particular county should not bear singular responsibility." *Id.* Indeed, the specific holding of *Familias Unidas* was that a county was *not* liable under *Monell* for a county judge's enforcement of an unconstitutional state statute.

[6] The city of Buffalo had no policy regarding Judge Bagley's judicial duties. If Judge Bagley erred in their exercise, the city is not liable simply because Judge Bagley held the office of municipal judge, any more than the county in *Familias Unidas* was liable for the judicial acts of a county judge. The urged reading would subvert the message of *Monell* that municipalities cannot be vicariously liable under § 1983. *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984) (en banc).

On these facts, the district court would have been justified in granting a directed verdict for the city of Buffalo, and was *a fortiori* correct in denying Carbalan's motion for new trial. Because a verdict for Carbalan against the city would have been impermissible as a matter of law, any error in the jury charge on municipal liability was harmless. *Lyle v. R.N. Adams Construction Co.*, 402 F.2d 323 (5th Cir.1968).

**666**  760 FEDERAL REPORTER, 2d SERIES

IV

[7] Finally, Carbalan argues that because the jury agreed that the refusal of the motor club cards was a constitutional deprivation, he "prevailed" within the meaning of 42 U.S.C. § 1988, and should have been awarded attorneys' fees. To prevail, though, a plaintiff must obtain "the primary relief sought." *Taylor v. Sterrett,* 640 F.2d 663, 669 (5th Cir.1981). Carbalan has won no relief against anyone, and is not entitled to attorneys' fees. *Robinson v. Kimbrough,* 652 F.2d 458, 466 (5th Cir.1981) (plaintiffs cannot recover attorneys' fees "for the pursuit of claims on which they obtained no relief, judicial or otherwise.").

The judgment of the district court is AFFIRMED.



Frank JURECZKI, Plaintiff-Appellant, Cross-Appellee,

v.

The CITY OF SEABROOK, TEXAS, et al., Defendants-Appellees, Cross-Appellants.

No. 84–2272.

United States Court of Appeals, Fifth Circuit.

May 20, 1985.

Rehearing and Rehearing En Banc Denied June 17, 1985.

Plaintiff, who was arrested twice in two weeks for three violations of building code, brought action for equitable relief and monetary damages under section 1983 and the Federal and Texas Constitutions. After dismissal of his complaint, the United States Court of Appeals for the Fifth Circuit, 668 F.2d 851, reversed and remanded with instructions to conduct a hearing on defendants' motion to dismiss and on the issue of damages should there be a trial on the merits. Thereafter, the United States District Court for the Southern District of Texas, Ross N. Sterling, J., directed a verdict for defendants at the close of trial, and plaintiff appealed. The Court of Appeals, Wisdom, Circuit Judge, held that: (1) even if officer seeking a warrant acted maliciously in procuring arrest warrant, plaintiff was not deprived of liberty without due process of law where probable cause existed to arrest plaintiff and where judge was within the law in issuing either an arrest warrant or a summons upon filing of the valid criminal complaint, and (2) arrest of plaintiff for violation of building code did not violate plaintiff's rights to equal protection where building inspector, who customarily issued first warnings to building code violators, was unsuccessful in his attempts to contact plaintiff regarding his violation and where judge, who recently came on the bench, had independently decided to issue arrest warrants rather than summons upon receipt of a complaint from building inspector.

Affirmed.

**1. Constitutional Law** ⇐262

Even if officer seeking a warrant acted maliciously in procuring arrest warrant, plaintiff was not deprived of liberty without due process of law where probable cause existed to arrest plaintiff for violation of building code and where judge was within the law in issuing either an arrest warrant or a summons upon filing of the valid criminal complaint. Vernon's Ann. Texas C.C.P. arts. 2.09, 15.03; U.S.C.A. Const.Amends. 4, 14; 42 U.S.C.A. § 1983.

**2. Constitutional Law** ⇐228.2

Unequal application of facially valid building regulations can result in equal protection violations. U.S.C.A. Const. Amend. 14.

**3. Constitutional Law** ⇐228.2

Arrest of plaintiff for violation of building code did not violate plaintiff's rights to equal protection where building inspector, who customarily issued first